UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AGUSTIN ANTONIO RIVERA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00944-MPB-MJD |
| | ) | |
| NATASHA DOUGLASS, | ) | |
| SAMUEL OLSEN, | ) | |
| TODD M. LYONS, | ) | |
| MARKWAYNE MULLINS, | ) | |
| TODD BLANCHE, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Agustin Rivera is a noncitizen subject to a reinstated order of removal and is being detained pending his removal to El Salvador, his native country. He sought withholding or deferral of his removal through immigration proceedings, which resulted in an immigration judge granting him relief. However, the Board of Immigration Appeals reversed and ordered him removed. That order is currently being reviewed by the United States Court of Appeals for the Third Circuit, where a stay of his removal has been issued pending review.

Mr. Rivera has been detained since March 2024. He is currently being held at the Miami Correctional Facility in Bunker Hill, Indiana[1] on behalf of U.S. Immigration and Customs Enforcement ("ICE"). He filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody.

For the reasons discussed, the petition is **denied**.

---

[1] *See* https://locator.ice.gov/odls/#/details (last visited July 10, 2026). Mr. Rivera was previously detained at the Clinton County Jail when he filed his petition but was later transferred to Miami Correctional Facility. *See* dkt. 1 at 3.

## I.    Background

Mr. Rivera initially came to the United States from El Salvador in 1999 at the age of 19. Dkt. 1 at ¶ 20-21. He went to live in New York City with his father, who had fled El Salvador earlier after being kidnapped and tortured by government officials for his involvement in El Salvador's civil war. *Id.* After briefly living with his father, Mr. Rivera moved to North Carolina. *Id.* at ¶ 22.

While in North Carolina, Mr. Rivera was recruited into the MS-13 gang and became involved in criminal activity. *Id.* In April 2003, Mr. Rivera was involved in the carjacking of a 1984 Fleetwood Cadillac that resulted in the murder of the vehicle's two occupants. Dkt. 6-1 at 41. He eventually pleaded guilty to carjacking with the intent to cause death or serious bodily harm and which resulted in death. *Id.* at 34-38. Mr. Rivera was sentenced to serve a 197-month term of imprisonment in the Federal Bureau of Prisons with five years of supervised release. *Id.* at 23-25.

Mr. Rivera finished serving his sentence in 2021, at which time he was removed from the United States to El Salvador under a final removal order issued on November 20, 2020. Dkt. 1 at ¶ 23; dkt. 6-1 at 21. The removal order states that he was "not a citizen or national of the United States and . . . not lawfully admitted for permanent residence." Dkt. 6-1 at 21. It further states that, because he was  "convict[ed] for an aggravated felony," he was "ineligible for any relief from removal" and "deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. 1227(a)(2)(A)(iii)." *Id.*

Mr. Rivera claims that he was pressured into assenting to removal by an ICE official, despite informing the official of his fear of returning to El Salvador. Dkt. 1 at ¶ 23. At the time he was removed, Mr. Rivera had disavowed involvement in MS-13 but was fearful that he would continue to be associated due to his numerous gang-affiliated tattoos. *Id.* at ¶ 24.

Mr. Rivera arrived in El Salvador in mid-2021. *Id.* While there, Mr. Rivera claims he was harassed by the military and local police and threatened with death if he did not leave the country. *Id.* at ¶ 24-25. Mr. Rivera was also threatened with imprisonment because of his former membership in MS-13. *Id.* In the face of these continued threats, in May 2022, Mr. Rivera again fled El Salvador for the United States. *Id.* at ¶ 26-27.

He arrived in the United States in June 2022 and was arrested on charges of illegal reentry. *Id.* at ¶ 27; dkt. 6-1 at 60. He pleaded guilty to the charge in November 2022 and was sentenced in March 2023 to a 30-month term of imprisonment with one year of supervised release. *Id.* Mr. Rivera finished serving his term of imprisonment in March 2024 at which point he was transferred to the Moshannon Valley Processing Center in Phillipsburg, Pennsylvania. *Id.* at ¶ 28.

On March 18, 2024, the Department of Homeland Security ("DHS") reinstated the prior removal order, dkt. 6-1 at 21-22, and issued a Form I-863, Notice of Referral to Immigration Judge, initiating "'withholding[-]only' proceedings." *Id.* at ¶ 29-31; dkt. 6-1 at 5. The next month, April 2024, Mr. Rivera applied for withholding of removal and protection under the Convention Against Torture (sometimes "CAT").[2] Dkt. 1 at ¶ 32. The immigration judge granted the application for protection under CAT in September 2024 after finding that it was likely Mr. Rivera would be tortured by, or with the acquiescence of, the Salvadoran government. *Id.* at ¶ 33; dkt. 6-1 at 6. DHS appealed the decision to the Board of Immigration Appeals ("BIA"). The BIA sustained the appeal and the decision of the immigration judge was vacated. Dkt. 6-1 at 5. The BIA issued an amended decision on April 24, 2025, and Mr. Rivera was again subject to a final removal order.

Mr. Rivera then sought review of the BIA's decision from the United States Court of Appeals for the Third Circuit on April 23, 2025. Dkt. at 6-2 at 5. Two days later, Mr. Rivera sought

---

[2] The Convention Against Torture and Other Cruel Inhuman or Degrading Treatment or Punishment, Dec. 10 ,1984, S. Treat Doc. No. 100-200, 100-20, 1465 U.N.T.S. 85 (entered into force for United States, Nov. 20, 1994).

to stay the order of removal. *Id.* The stay of removal was temporarily granted by the Third Circuit that same day. Later, on August 28, 2025, the stay of removal was granted pending review of the BIA's decision. *Id.* Oral arguments on the petition for review were held on March 20, 2026, and the cases was submitted to the panel that day.[3] *Id.*

In the meantime, Mr. Rivera was transferred to the Miami Correctional Facility in Bunker Hill, Indiana, in November 2025. Dkt. 1 at ¶ 41. A week after arriving, he was transferred to the Clinton County Jail in Frankfort, Indiana.[4] *Id.* at ¶ 42. He filed the instant petition on May 8, 2026, seeking immediate release from custody due to the prolonged detention that he says has taken a toll on his mental health. *Id.* at ¶ 48.

## II.    Discussion

Mr. Rivera claims that his prolonged detention without bond violates the Due Process Clause of the Fifth Amendment under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. 1 at 20-23. He argues that his removal from the country is no longer reasonably foreseeable, so his detention is no longer authorized by statute. *Id.* at 20. The respondents argue that Mr. Rivera is properly detained pursuant to statutory authority pending his removal from the country. This case turns on whether Mr. Rivera has established that his removal from the country is no longer reasonably foreseeable. *See Zadvydas*, 533 U.S. at 699-700. The Court finds that he has not met that burden.

"The Immigration and Nationality Act (INA) establishes procedures for removing aliens living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). Once subject to an order of removal, the INA likewise provides for detention of an alien (sometimes "noncitizen") pending his removal from the United States. *See id.*; 8 U.S.C. § 1231.

---

[3] As of the date of this order, the Third Circuit has not issued a decision on Mr. Rivera's petition for judicial review. *See Agustin Rivera v. Attorney General United States of America*, No. 25-1784 (3d Cir. Nov. 4, 2025).

[4] According to the ICE locator, Mr. Rivera was transferred to the Miami Correctional Facility. *See supra* note 1.

The procedures for the removal of a noncitizen and his detention pending removal differ depending on whether a noncitizen is faced with initial removal proceedings or has unlawfully reentered the United States and is subject to a reinstated order of removal. *See id.* at 526. The Court briefly discusses orders of removal, which is useful to provide context for the detention of a noncitizen pending his removal.

### A. Order of Removal

Generally, if DHS[5] "discovers that an alien is living in the United States without authorization, it may initiate removal proceedings . . . before an immigration judge to determine whether he is inadmissible or deportable, and therefore subject to removal." *Guzman Chavez*, 594 U.S. 527 (citing 8 U.S.C. §§ 1229(a), 1229a(a)(1)). If a noncitizen is subject to detention during the pendency of removal proceedings, *see* 8 U.S.C. § 1226(a), the noncitizen "may generally apply for release on bond or conditional parole." *Guzman Chavez*, 594 U.S. 523 (citing 8 U.S.C. § 1226(a)(2)).

During the course of the removal proceedings, the noncitizen will ordinarily be provided with a hearing before an immigration judge where he has certain procedural rights. *See id.*; *see also* 8 U.S.C. § 1229a(b)(4). At the conclusion of the hearing, the immigration judge will issue an order of removal if it is determined that the noncitizen is inadmissible or deportable. *Guzman Chavez*, 594 U.S. at 528 (citing 8 U. S. C. § 1229a(c)(5)). If this occurs, the noncitizen "may file a motion to reconsider, a motion to reopen, an appeal to the BIA, and a petition for review in federal court." *Id.* (citing 8 U.S.C. §§ 1229a(c)(5)-(7), 1252(b); 8 C.F.R. § 1240.15).

---

[5] As the Supreme Court mentioned in *Guzman Chavez*, "[a]lthough many of the provisions . . . refer to the Attorney General, Congress has also empowered the Secretary of Homeland Security to enforce the Immigration and Nationality Act." 594 U.S. at 527 n.1 (citing *Nielsen v. Preap*, 586 U.S. 392, 397 n. 2 (2019)).

"In addition to the removal procedures outlined above, Congress has created an expedited process for aliens who reenter the United States without authorization after having already been removed." *Guzman Chavez*, 594 U.S. at 529-30. The statute states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).[6] This section "applies to 'all illegal reentrants,' and it 'explicitly insulates the removal orders from review,' while also 'generally foreclos[ing] discretionary relief from the terms of the reinstated order.'" *Guzman Chavez*, 594 U.S. at 530 (quoting *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 (2006)).

"It does not, however, preclude an alien from pursuing withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order." *Id.* (citing *Fernandez-Vargas*, 548 U.S. at 35, n.4; 8 U.S.C. § 1231(b)(3)(A)). "There are two paths for seeking withholding of removal," which "depends on whether the alien is subject to the standard removal proceedings or a reinstated order of removal." *Guzman Chavez*, 594 U.S. at 530-31.

For the latter, "because an alien subject to a reinstated order of removal will not have any removal proceedings, the process begins for him only if he expresses a fear to DHS of returning to the country of removal." *Id.* (citations omitted). If so, he is referred to an asylum officer and (if credible) then an "immigration judge for initiation of withholding-only proceedings." *Id.* at 531.

---

[6] The process for reinstating a removal order is established by regulation. *See Guzman Chavez*, 594 U.S. at 530 ("In short, the agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the order." (citing 8 C.F.R. §§ 241.8(a)-(c), 1241.8(a)-(c))).

Withholding-only proceedings are "limited [exclusively] to a determination of whether the alien is eligible for withholding or deferral of removal." *Id.* The immigration judge's final decision is reviewable to the BIA. *Guzman Chavez*, 594 U.S. at 531.

If withholding or deferral is granted, "DHS may not remove the alien to the country designated in the removal order unless the order of withholding is terminated." *Id.* This is country specific, so "nothing prevents DHS 'from removing [the] alien to a third country . . . .'" *Id.* (citations omitted).

### B. Detention Pending Removal

Once a noncitizen is "ordered removed," whether that be from an initial removal order or a reinstated order, "DHS must physically remove him from the United States within a 90-day 'removal period.'" *Guzman Chavez*, 594 U.S. at 528-29 (first citing 8 U.S.C. § 1231(a)(1)(A), then citing 8 U.S.C. § 1231(a)(2)). During this period, "detention is mandatory." *Id.* There are three dates that mark the beginning of the removal period:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*See id.* at § 1231(a)(1)(B).

For those subject to reinstated removal orders, the removal period begins to run on the date the alien's removal order was reinstated. *Guzman Chavez*, 594 U.S. at 535 (finding "reinstated removal orders are 'administratively final'" because "§ 1231(a)(5) explicitly prohibits [a noncitizen] from seeking review or relief from the order after it is reinstated following unlawful reentry. In other words, there is nothing left for the BIA to do with respect to the removal order other than to execute it.").

The removal period may be extended in at least three circumstances. *See* 8 U.S.C. §§ 1231(a)(1), (a)(6), (c)(2)(A). Relevantly, a noncitizen "may be detained beyond the removal period" if the noncitizen is either, "inadmissible under section 1182," "removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)," or "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id.* at § 1231(a)(6). "Continued detention under this provision creates the 'post-removal-period.'" *Guzman Chavez*, 594 U.S. at 529.

Because § 1231(a)(6) does not authorize indefinite detention, a noncitizen subject to a removal order may be detained under that section only for "a period reasonably necessary to bring about [his] removal from the United States." *Zadvydas*, 533 U.S. at 689-99. That period is presumptively six months. *See id.* at 701. After this, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.*, the government must either rebut that showing or release the noncitizen. *Id.*; *Guzman Chavez*, 594 U.S. at 529 (citing 8 C.F.R. § 241.13).

## C. Mr. Rivera's Current Detention

Mr. Rivera argues his detention is not authorized under *Zadvydas* because "he has shown that his removal is not reasonably foreseeable." *Id.* Alternatively, Mr. Rivera claims his detention without a bond hearing violates due process and asks the Court to hold a hearing and review his continued detention. *Id.* Mr. Rivera asks the Court to impose on the government the burden of showing that he is not a danger to the community or a flight risk. *Id.*

Regarding a bond hearing, the statute authorizing Mr. Rivera's detention during the post-removal period does not entitle him to one. *Guzman Chavez*, 594 U.S. at 526 ("We conclude that § 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue withholding of removal."). This

8

is true even at the conclusion of the presumptively reasonable post-removal period. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022) ("The issue in this case is whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community. It does not."). The Court thus declines to find Mr. Rivera is entitled to a bond hearing and will neither order one nor hold one.

Regarding Mr. Rivera's detention, he argues it is no longer permitted under *Zadvydas* because his removal from the United States is no longer reasonably foreseeable. But a review of the facts in *Zadvydas* demonstrate that the primary concern in that case, indefinite and potentially permanent detention, is not present here. *See* 533 U.S. at 684. The Supreme Court in *Zadvydas* was faced with two petitioners subject to prolonged detention under § 1231(a)(6) because the government was unable to remove them to the countries listed in the respective removal orders. *Id.* The first petitioner, a resident alien born to Lithuanian parents in a displaced persons camp in Germany, came to the United States at a young age but was later ordered removed after a lengthy criminal history. *Id.* However, the two countries he was ordered removed to refused to take him because he was not a citizen of Germany nor a citizen or permanent resident of Lithuania. *Id.* The second petitioner, likewise a resident alien but born in Cambodia before taking refuge in Thailand, came to the United States at a young age and was ordered removed after he finished serving a sentence for manslaughter. *Id.* at 685. The country to which the second petitioner was ordered removed (Cambodia) did not have a repatriation treaty with the United States, so it was unclear whether he could even be removed at all. *Id.* at 686.

9

On the other hand, Mr. Rivera's detention is not being prolonged for the reason that the country designated in the removal order won't accept him. There is nothing in the record indicating that El Salvador would refuse Mr. Rivera, and he makes no allegation to that effect. That he desires not to be removed to El Salvador is not an issue this Court is at liberty to consider. The Court can only consider whether he has established that his removal is no longer reasonably foreseeable. And, on the current record, the Court concludes that he has not carried his burden. The only impediment to his removal to El Salvador for a second time is the stay issued by the Third Circuit pending review of his withholding-only proceedings. That could conclude any day now, as the case was submitted for a decision on March 20, 2026.

When—not if—the Third Circuit finishes review of his petition, one of two scenarios will likely be true: (1) the BIA's decision to order him removed will be affirmed, permitting DHS to carry out his removal to El Salvador; or (2) the BIA's decision will be vacated or other similar disposition.[7] That there are two potential outcomes at the conclusion of judicial review does not present a case where Mr. Rivera's removal is "no longer practically attainable." *Zadvydas*, 533 U.S. at 690. If the BIA's decision is affirmed, Mr. Rivera will be removed from the United States to El Salvador. If it is vacated, Mr. Rivera will be subject to supervision and his current petition would be moot. The relevant regulations give DHS the authority to "grant release or parole" to a noncitizen subject to detention under § 1231(a)(6), *see* 8 C.F.R. § 241.4(a), who was "granted withholding or deferral of removal under the Convention Against Torture." *Id.* at §§ 241.4(b)(3), (i)(7). *See also id.* at §§ 241.5, 241.13. And if he isn't released to supervision, he may prosecute an

---

[7] There is also the possibility that Mr. Rivera seeks and is granted certiorari by the Supreme Court of the United States in the event that the Third Circuit affirms the BIA's decision. But this is a remote possibility and the two scenarios mentioned are more than likely.

10

action for a writ of habeas corpus at that time, which would present different factual and legal considerations regarding his detention.

The Court is unaware of any Seventh Circuit case that has addressed post-removal period detention that is prolonged solely because of withholding-only proceedings.[8] However, several circuit courts of appeals have found that claims under *Zadvydas* are not actionable where the only impediment to removal is pending withholding-only proceedings. *See Castaneda v. Perry*, 95 F.4th 750, 757-58 (4th Cir. 2024) (stating that "ongoing withholding-only proceedings, even lengthy ones, simply do not present the same risk of 'indefinite and potentially permanent' detention at issue in *Zadvydas*."); *G.P. v. Garland*, 103 F.4th 898, 902 (1st Cir. 2024) (finding, once the current withholding-only proceedings end, [the petitioner] will either be removed to the Dominican Republic or the government will have to begin the process of finding a different country to accept him."); *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (agreeing with the district court, that once the petitioner's appeal of the withholding-only proceedings concluded, nothing would impede his removal).

In each case considered by the respective circuit courts, the respective petitioner was detained for a significant period of time pending resolution of the withholding-only proceedings at the time the court issued its opinion. *See Castaneda*, 95 F.4th at 754-55 (detention from May 2019 through the denial of habeas corpus relief by the district court in September 2022, as well as

---

[8] The Respondents point to *Hussain v. Mukasey*, but that case does not resolve the specific question before the Court because it dealt with continued detention under § 1226(c) pending removal proceedings. 510 F.3d 739, 742 (7th Cir. 2007); *see also Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1033 (E.D. Wis. 2007) ("Thus, in the present posture of the case, the Court cannot say that [the petitioner's] mandatory detention under 8 U.S.C. § 1226(c) violates due process."), *aff'd sub nom. Hussain*, 510 F.3d 739. Moreover, § 1226(c) and § 1231(a)(6) have been distinguished by the Supreme Court, where the Court found that, "[u]nder § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Demore v. Kim*, 538 U.S. 510, 529 (2003). So, while detention under § 1226(c) is definite in all cases, the same is not true for § 1231(a)(6).

through conclusion of appeal in March 2024), *G.P.*, 103 F.4th at 899-900 (detention from October 2020 through the denial of habeas corpus relief by the district court in January 2024, as well as through conclusion of appeal in June 2024), *Martinez*, 968 F.3d 555 at 558-59 (detention from December 2017 through the denial of habeas corpus relief by the district court in August 2019, as well as through conclusion of appeal in July 2020).

Several other district courts have followed this rationale and found that ongoing withholding-only proceedings do not make a noncitizen's removal no longer reasonably foreseeable. *See, e.g., Lemus v. Warden*, No. 3:26CV47 DRL-SJF, 2026 WL 1703673 at *2 (N.D. Ind. June 12, 2026); *Brar v. Wofford*, No. 1:26-CV-2177-DC-JDP, 2026 WL 1847343 at *1 (E.D. Cal. June 26, 2026); *Paez v. Scott*, No. 2:26-CV-01144-LK, 2026 WL 1396111 at *4 (W.D. Wash. May 19, 2026); *Linares v. Collins*, No. 1:25-CV-00584-RP, 2025 WL 2726549 at *6 (W.D. Tex. Aug. 12, 2025), *report and recommendation adopted*, No. 1:25-CV-584-RP, 2025 WL 2726067 (W.D. Tex. Sept. 24, 2025).

The Court finds these cases persuasive and finds Mr. Rivera's claim under *Zadvydas* fails. The stay issued pending review of his withholding-only proceeding is insufficient to show that his removal is no longer reasonably foreseeable. Mr. Rivera's "detention has a definite endpoint—the conclusion of his withholding-only proceedings." *Lemus*, 2026 WL 1703673, at *2.

### D. Due Process Claims

Mr. Rivera argues that his detention is unreasonable under the Due Process Clause of the Fifth Amendment and raises substantive and procedural due process claims. However, in the context of civil detention under § 1231, his due process claims turn on the standard set out in *Zadvydas*. *See Castaneda*, 95 F.4th at 760 ("*Zadvydas* largely, if not entirely, forecloses due process challenges to § 1231 detention apart from the framework it established."); *Lemus*, 2026 WL 1703673, at *3 ("In the § 1231(a) context, courts apply the *Zadvydas* standard to determine whether

a detention is consistent with due process."). This is apparent from *Zadvydas*, where the Supreme Court found a substantive right to "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint," and fashioned procedures to protect that substantive right. 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

The Court has already found that Mr. Rivera has failed to establish that his removal from the United States is no longer reasonably foreseeable. The Court thus declines to engage in any further due process analysis.

### E.  Mr. Rivera's Pending Motion to Maintain Records Under Seal

Finally, Mr. Rivera asks the Court to maintain under seal Exhibit "C" to his reply in support of the petition. Dkt. 11-2. The exhibit is a psychological report containing his medical and mental health information, which was prepared by a clinical psychiatrist. Dkt. 11-1. To show good cause, Mr. Rivera argues that the Health Insurance Portability and Accountability Act ("HIPPA") supports maintaining his sensitive personal information under seal, which is unopposed by counsel for the Federal Respondents. *Id.*

"Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *see also* S.D. Ind. L.R. 5-11(b) (A document may not be maintained under seal "unless authorized to do so by statute, rule, or court order."). Regarding the claim that HIPPA supports maintaining his health records under seal, "it is well-established that courts are not bound by HIPAA, 'which regulates the disclosure of information by only healthcare providers and their affiliates.'" *Benson v. City of Indianapolis*, No. 1:24-CV-00839-JPH-MJD, 2025 WL 3637013, at *2 (S.D. Ind. Dec. 15, 2025) (citing *Mitze v. Saul*, 968 F.3d 689, 693 (7th Cir. 2020)).

Nonetheless, this Court found in *Benson* that other courts within this circuit have permitted partial redactions of medical records that are immaterial to the issues presented in the case. *Benson*, 2025 WL 3637013 at *2 ("Medical information is often sensitive but nevertheless must be made public if it is material to the issues before the court."). So in line with *Benson*, the Court will grant the motion because nothing in Mr. Rivera's medical records is material to the legality of his current detention, and whether his removal from the United States can be carried out in the reasonably foreseeable future.

### III.    Conclusion

In light of the foregoing, Mr. Rivera's motion to maintain document under seal [dkt. 11] is **granted** and the **clerk is directed** to maintain under seal filing 11-2.

The petition for writ of habeas corpus [dkt. 1] is **denied**. The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Dated:  July 16, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel